```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

ROSALIND L. McCARROLL,            :
                                  :
    Plaintiff,                    :
                                  :
vs.                               :
                                  :   CIVIL ACTION 16-004-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
    Defendant.                    :

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405((g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 12).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 18). Oral argument was waived in this action (Doc. 17).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, McCarroll was forty-four years old, had completed a ninth-grade education (Tr. 47), and had previous work experience as a nurse's aide and cafeteria cook/worker (Tr. 67).  Plaintiff alleges disability due to degenerative disc disease of the lumbar spine with radiculopathy, traumatic osteoarthritis of the right knee, chronic pain, obesity, and dysthymia (Doc. 12 Fact Sheet).

Plaintiff applied for disability benefits on August 22, 2012, alleging a disability onset date of February 23, 2012 (Tr. 25, 155-61).  An Administrative Law Judge (ALJ) denied benefits, determining that although McCarroll could not return to her previous relevant work, she was capable of performing specific light and sedentary jobs (Tr. 25-34).  Plaintiff requested review of the hearing decision (Tr. 15), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, McCarroll alleges that:  (1) The ALJ substituted her opinion for that of a

2

medical professional; and (2) the ALJ did not properly develop the record (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 13).  The Court's summary of the relevant record evidence follows.

On March 28, 2011, McCarroll was examined by Dr. Andre J. Fontana, Orthopaedic, for complaints of right foot pain with mild swelling and right shoulder pain; the Doctor noted foot tenderness and mild impingement in the shoulder with some pain (Tr. 236, 476).  Plaintiff got a 3-D boot, a shoulder injection, and a prescription for Lortab.[1]  On April 11, Fontana noted continued pain in McCarroll's lower back; Lortab was again prescribed (Tr. 237, 475).  An MRI of the lumbar spine, taken two weeks later, revealed mild herniation at L3-4, degenerative changes at L4-5, and a possible pelvic lobular mass (Tr. 238, 472-73).  On June 9, Plaintiff received several lumbar epidural steroid injections, without complication (Tr. 241-42, 469-70).  On July 7, she received several more injections (Tr. 243, 467).  On February 23, 2012, Dr. Fontana examined McCarroll's back, noting that sensory and motor function was intact; she had spasms and severely restricted range of motion (hereinafter *ROM*) in the lumbar spine (Tr. 245, 466).  The Orthopaedist prescribed

---

[1] **Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

3

Tylox[2] and a Medrol Dosepak[3] and noted McCarroll was off work. On March 1, 2012, Plaintiff was doing a little better though she still had pain, spasm, and radicular pain down the leg; she was to continue off work (Tr. 246, 465). On March 10, an MRI showed that the lumbar spine was preserved; further findings showed disk desiccation, annular bulge at L4-5, and bulge at L2-3 for which she received a lumbar epidural and a prescription for Skelaxin[4] (Tr. 247-48, 464). On March 15, Plaintiff said that she continued to have pain, spasm, and restricted ROM (Tr. 248, 463); Fontana said that she could not work for approximately three weeks (Tr. 460-62).

On March 22, Dr. Donald R. Tyler, II, Neurosurgeon, examined McCarroll for chronic low back pain, radiating into her right buttock, knee, and heel; she rated the pain as seven on a ten-point scale (Tr. 253-57). The Doctor noted full ROM of all joints, but some diffuse lumbar tenderness; gait, strength in the lower extremities, and deep tendon reflexes in the upper and lower extremities were all normal. Diagnosing mechanical

---

[2] **Error! Main Document Only.**Tylox, a class II narcotic, is used "for the relief of moderate to moderately severe pain". *Physician's Desk Reference* 2217 (54th ed. 2000).

[3] A *Medrol Dosepak* (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation. *See* http://www.drugs.com/mtm/medrol-dosepak.html

[4] **Error! Main Document Only.***Skelaxin* is used "as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 830 (52nd ed. 1998).

instability, Tyler prescribed a back brace and Tylox, Lortab, and Skelaxin.  On March 27, 2012, Tyler noted bilateral lumbar spasm (Tr. 258-61).  On April 3, McCarroll agreed to undergo surgery; Zanaflex[5] was prescribed (Tr. 262-65).  The Neurosurgeon stated on April 5 that Plaintiff could return to light duty work (Tr. 277).

On April 18, McCarroll was admitted to Mobile Infirmary Medical Center for three nights to undergo an L3-4 and L4-5 transverse lumbar interbody fusion because of mechanical instability (Tr. 228-34).  The surgery went without complication and Plaintiff was discharged home in stable condition.

On May 10, Plaintiff told Dr. Tyler that she had lots of low back pain and spasm with right calf numbness, tingling, and pain; her right leg was weak and shaky, so she was using a cane (Tr. 266-70).  The Neurosurgeon noted normal posture and gait with lumbosacral spasm and limited ROM; sitting straight leg raise was negative.  Though diminished in the right lower extremity, all other strength measurements were full; Oxycontin,[6]

---

[5]**Error! Main Document Only.***Zanaflex* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity."  *Physician's Desk Reference* 3204 (52nd ed. 1998).

[6]**Error! Main Document Only.**"*OxyContin* tablets are a controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain where use of an opioid analgesic is appropriate for more than a few days."  *Physician's Desk Reference* 2344-46 (52nd ed. 1998).

5

Percocet,[7] and Flexeril[8] were prescribed.  Lumbar spine x-rays demonstrated satisfactory alignment and appearance of L3 through L5 fusion (Tr. 281).

On May 29, 2012, Plaintiff had increased knee pain; x-rays showed some trauma for which Dr. Fontana gave her a cortisone injection (Tr. 249, 461).  McCarroll had another injection on June 21 for crepitus and mild effusion of the right knee; the Doctor told her not to return to work for another month (Tr. 250, 458-59).

On June 7, McCarroll went to Coastal Health Occupational Pain Management for therapy[9] for the pain in her lumbar spine, radiating into her right leg; she rated her pain at five ((Tr. 298-301).  On examination, Dr. J. Steven Hankins, Osteopath, noted normal ROM in the cervical spine, no tenderness, and upper extremity strength at 5/5; in the lumbar spine, ROM was limited, with pain, and spasm in the paraspinous muscles.  Plaintiff could not squat and could not walk or stand on her heels or toes; she had full strength in all muscle groups.  Hankins

---

[7] *Percocet* is used for the relief of moderate to moderately severe pain.  **Error! Main Document Only.***Physician's Desk Reference* 1125-28 (62nd ed. 2008).

[8] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[9] Physical/occupational therapy records from Providence Hospital, dating June 13, 2012 through October 16, 2012, can be found at Tr. 302-87.  Those records will not be summarized herein.

6

recommended aquatic therapy three times a week for four weeks and prescribed Neurontin,[10] MS Contin,[11] Mobic,[12] and baclofen.[13] On June 26, 2012, McCarroll told the Ostoepath that the aquatic therapy had increased her pain, so she had been moved to land physical therapy; she was still using a walker (Tr. 294-97). Plaintiff still experienced pain (rated at seven), was having medication side effects, and required assistance with some of her activities of daily living (hereinafter *ADL*'s); she had difficulty rising from a seated position. On examination, Hankins noted no difference in the cervical and lumbar spine; he gave McCarroll an injection and stated that she was functioning at a very sedentary level and was not able to perform meaningful work at that time.

On July 10, McCarroll told Dr. Tyler that she still had right leg pain that increased with activity and was worse with therapy; she was using a walker (Tr. 271-74). He noted full ROM in all joints and ordered tests; he also indicated that she should be excused from work for two months (Tr. 278). X-rays of

---

[10]**Error! Main Document Only.***Neurontin* is used in the treatment of partial seizures.  *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[11]*MS Contin* is a narcotic for around-the-clock pain.  *See* https://www.drugs.com/ms_contin.html

[12]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[13]*Baclofen* is a muscle relaxer used in treating muscle symptoms such as spasm, pain, and stiffness.  *See* http://www.drugs.com/baclofen.html

the lumbar spine were unchanged from two months earlier (Tr. 282).  An MRI of the lumbar spine showed right hemilaminectomy and mild right and minimal left foraminal encroachment at L3-4; at L4-5, there was right hemilaminectomy, moderate stenosis at the right L4 rootlet and mild-to-moderate stenosis due to marginal osteophyte formation (Tr. 283-84).

On July 19, 2012, Dr. Fontana noted that knee ROM and strength were good; he released Plaintiff to light duty work with no squatting, stooping, or kneeling (Tr. 251, 456-57).

On July 25, Plaintiff appeared before Dr. Hankins's P.A. with a slow, antalgic gait, using a walker; on examination, there was decreased strength (4/5) in the muscle groups of the right lower extremity (Tr. 290-93).  McCarroll was having trouble sleeping because of her pain (six of ten), having difficulty with ADL's, and could stand and walk for only a limited period of time; she had stopped physical therapy until further tests could be performed.  Medication amounts were adjusted with Ambien[14] and Oxycodone[15] added to the mix.  An MRI of the lumbar spine on July 26 showed right hemilaminectomy at L3-L5 levels and mild central disc protrusion without

---

[14]*Ambien***Error! Main Document Only.** is a class four narcotic used for the short-term treatment of insomnia.  *Physician's Desk Reference* 2799 (62nd ed. 2008).

[15]**Error! Main Document Only.***Oxycodone* is a pure agonist opioid whose principal therapeutic action is analgesia.  *Physician's Desk Reference* 2680-81 (62nd ed. 2008).

8

significant stenosis of central canal or foramina at L2-3 (Tr. 286).  On August 22, 2012, Plaintiff reported constant, stabbing pain (7-9/10) in her lumbar back, radiating into her right leg; she asserted that her pain was worse than before the surgery (Tr. 286-90).  Examination results were, essentially, the same.

On October 22, McCarroll was examined by Dr. Hunt Hapworth, at Comprehensive Pain and Rehabilitation, to evaluate her back pain, radiating down to her right foot, that had only gotten worse in spite of medications, a brace, surgery, and physical therapy (Tr. 406-09).  The Doctor noted full strength in all muscle groups except in the lower right extremity (4+/5); she also had decreased sensation in the extremity.  Supine straight leg raising test produced back and right button pain; there was diminished ROM on extension, flexion, lateral bending, and rotation in the lumbar spine.  Lab results demonstrated that Plaintiff was not abusing her medications.  Hapworth's diagnostic impression was lumbar post-laminotomy syndromes, lumbar radiculitis, and lumbar degenerative disc disease; the Doctor adjusted her medication regimen, adding Cymbalta,[16] and discussed different plans for addressing the pain.  The Doctor stated that she should be off of work until her condition improved (Tr. 409).  The next day, Plaintiff underwent a Right

---

[16]Cymbalta is used in the treatment of major depressive disorder.  **Error! Main Document Only.**_Physician's Desk Reference_ 1791-93 (62nd ed. 2008).

9

L1 sympathetic block, performed by Osteopath Matthew Barfield, with no obvious complications; good pain relief was achieved (Tr. 403-05).  On November 6, 2012, McCarroll told Dr. Barfield that the block had decreased her pain, by half, for a few hours, but that it returned to the same level; the examination showed continued decreased ROM in the lumbar spine as well as mild myofascial tender points bilaterally at L4-5 (Tr. 401-02).  On November 8, the Osteopath performed an L5 nerve root block with transforaminal epidural injection on the right with no complications; good pain relief was noted (Tr. 399-400).  On November 26, McCarroll told Dr. Hapworth that the nerve block was still experiencing pain; she reported being unable to perform many of her ADL's and was usually limited to ambulating between her chair and bed (Tr. 396-98).  The Doctor noted a recent nerve study, revealing acute chronic L5 radiculopathy; on exam, Plaintiff had full muscle strength in all extremities and full ROM in the lumbar spine with no obvious myofascial trigger/tender points or facet tenderness.  On November 27, 2012, Dr. Hapworth indicated that McCarroll was disabled and would not be able to return to work (Tr. 398).

On November 27, Psychologist Jake Epker examined Plaintiff on referral "for a behavioral medicine evaluation to help identify potential psychosocial risk factors for poor surgical outcome and generate appropriate treatment recommendations" (Tr.

10

433; see generally Tr. 433-35). McCarroll said she had been depressed since surgery; she reported having low energy, attention problems, sleeping only one-to-two hours nightly, and difficulty with having to depend on others to help her. Epker stated that her claim of level-ten pain for three weeks indicated exaggeration. McCarroll underwent psychometric testing, demonstrating borderline intellectual abilities; Epker thought the results were valid. There was "evidence of significant depression, anxiety, somatization, and symptom dependency. Likewise there [was] evidence of extremely high levels of pain catastrophizing" (Tr. 444). The Psychologist indicated there was a likely chance of opioid abuse; he did not think she was a candidate for implanting a spinal cord stimulator but that she would benefit from a pain management group. Records show that Plaintiff attended four sessions over the next six months.

On December 3, 2012, Dr. Hapworth performed an S1 selective nerve root block with a transforaminal epidural injection on the right without complications; good pain relief was noted (Tr. 394-95). On December 17, McCarroll reported no benefit from the recent procedure; Hapworth noted mildly restricted lumbar ROM in flexion and extension and low back pain on the right (Tr. 417-18). She had preserved strength in the lower extremity but some fatigability on repeated testing within the right ankle but no

11

evidence of deep vein thrombosis; an ankle foot orthotic was ordered, but she could not afford it (Tr. 415, 418).  On January 17, 2013, a CRNP noted that Plaintiff could complete ADL's and that a drug screen suggested compliance; McCarroll rated her pain at five  (Tr. 415-16).  Tenderness was noted at L3 through S1 with lumbar facet tenderness, greater on the right, at L2 through L5.  Plaintiff's gait was stable and she had a positive straight leg raise on the right; subjective fine touch sensation was diminished in the right calf.  On January 18, Dr. Barfield gave her a sympathetic injection on the right L2 (Tr. 412-14).  On February 13, Plaintiff reported that the injection had no appreciable benefit and that she was through with additional injections and nerve blocks; she could complete ADL's (Tr. 410-11).  The CRNP noted facet tenderness, greater on the right, at L4-L5, and that straight leg raise produced back pain; sensation was diminished in an L5-S1 distribution in the right lower extremity.

On February 21, Dr. Tyler noted no spinal deformity or scoliosis with normal posture and gait; McCarroll had full ROM of all joints (Tr. 432-35).  She had lumbar spasm bilaterally and decreased strength in the right upper extremity.  On February 27, Plaintiff underwent surgery to remove infected hardware from the transverse lumbar interbody fusion, performed ten months earlier (Tr. 427-31).  On March 21, Plaintiff

12

reported that her leg pain was much better though she still had local soreness with activity; she rated her pain at six (Tr. 423-26). Dr. Tyler noted full ROM of all joints; he diagnosed back pain with radiculopathy and mechanical instability and continued her medicinal regimen. On May 2, 2013, McCarroll reported that her leg pain continued to improve, though she experienced activity-related leg cramping; overall, she was doing much better since surgery and was continuing to improve (Tr. 419-22). Plaintiff reported her pain at five.

On October 7, McCarroll reported to Dr. Fontana that her right knee pain had flared up over the last two months; he found mild swelling and crepitus though she was neurovascularly intact, but gave her an injection (Tr. 454-55). On October 29, Plaintiff received a second injection (Tr. 450-51); on November 5, she received a third injection (Tr. 448-49).

On November 22, Plaintiff went to the Mobile Infirmary Medical Center ER for two weeks of lower back pain, aggravated by activity and movement; though there was tenderness, she had normal ROM (Tr. 491-98). X-rays showed lower lumbar disc disease with previous fusion, but no new acute abnormality; she was discharged to see her personal physician.

On December 3, McCarroll reported that the injections had not helped much; Dr. Fontana noted crepitus (Tr. 446-47).

On April 1, 2014, Plaintiff went to the UAB Medicine

13

Neurology Department for low back pain rated at a level ten; because of it, she could not perform ADL's (Tr. 499-506). On exam, McCarroll had diminished strength and altered sensation in her right foot; she had very little lumbar spine ROM and was tender over the sacroiliac and right piriformis region. Prescriptions for pain relief were given. An MRI taken two weeks later demonstrated granulation tissue within the right L4-L5 lateral recess encroaching upon and possibly contacting the descending right L5 nerve root; in addition, there was mild to moderate degenerative disk changes at L2-L3 with mild central canal narrowing (Tr. 505-06).

This concludes the Court's summary of the evidence.

McCarroll brought this action, first claiming that the ALJ substituted her opinion for that of a medical professional. She specifically refers to a report by Dr. Fontana that Plaintiff asserted was mischaracterized (Doc. 12, p. 8). The Court notes that another component of this argument is that the residual functional capacity (hereinafter *RFC*), as determined by the ALJ, is unsupported by the evidence.

The Court first notes that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996

14

WL 374184, *3.  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2015).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).  The Court further notes that a treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary," existing when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(*quoting Lewis v. Callahan*, 125 F.2d 1436, 1440 (11th Cir. 1997)).

The ALJ's assessment of Plaintiff's RFC is as follows:

> [T]he claimant had the residual functional capacity to perform a reduced level of light work as defined in 20 C.F.R. 404.1567(b). She can lift and carry up to ten pounds frequently and twenty pounds occasionally. She needs to alternate between sitting and standing about every 30 minutes to an hour but would not need to leave the workstation. She is precluded from operating foot controls and can only occasionally climb stairs and ramps and never climb ladders, ropes or scaffolds.  She can occasionally

>     bend, crouch, or stoop and never kneel or
>     crawl.  She can have no exposure to
>     unprotected heights or dangerous equipment.
>     She needs to avoid tasks that involve a
>     variety of instructions or tasks but is able
>     to perform jobs with only 1-2 step
>     instructions and able to carry out tasks
>     involving detailed written or oral
>     instructions involving a few concrete
>     variables in or from standardized
>     situations.  She is to have no work in
>     crowds and only occasionally contact with
>     the public.

(Tr. 29-30).

It appears to the Court that McCarroll's argument focuses on the ALJ's findings regarding Dr. Fontana's report as no particular objection is made as to the specific abilities or limitations found in the RFC determination (*see* Doc. 12, pp. 2-9).  The objection put forth was that the ALJ gave more weight to Dr. Fontana's evaluation in a Worker's Compensation Assessment than it deserved (Docs. 12, pp. 7-8).  On that form, completed on December 3, 2013, Dr. Fontana indicated that Plaintiff had traumatic osteoarthritis of the right knee, but no other diagnoses; he went on to mark *N/A*[17] on every specific question regarding her treatment and work restrictions with no further explanation (Tr. 446).

While admitting that Fontana's Assessment amounts to no more than the diagnosis of one impairment, the Court cannot find

---

[17]The Court understands this to mean any of the following:  not applicable, not available, or no answer.

that it demonstrates any error in the ALJ's RFC assessment. Furthermore, it does not demonstrate that the ALJ substituted her opinion for that of the Orthopedist. The Court's review of the evidence, like the ALJ's, revealed no physician's finding that Plaintiff was unable to work for one year's time, the amount necessary for a disability finding. *See* 20 C.F.R. § 404.1505(a). The Court further notes that even though, Dr. Hapworth, on November 27, 2012, indicated that McCarroll was disabled and would not be able to return to work (Tr. 398), examination notes from the Doctor less than a month later indicated that McCarroll was suffering only mildly restricted lumbar ROM in flexion and extension (Tr. 417-18); even those restrictions were not noted a month later (Tr. 415-16). The Court finds that Plaintiff's claim, that the ALJ improperly substituted her opinion for that of a treating physician, is without merit.

McCarroll next claims that the ALJ did not properly develop the record. More specifically, Plaintiff asserts the ALJ should have ordered a consultative orthopedic examination to consider the combination of all of her impairments (Doc. 12, pp. 9-10).

The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not

17

required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court has reviewed all of the medical evidence (279 pages) and finds that it was sufficient for the ALJ to make a determination.  The failure of the record evidence to support a disability finding does not support the gathering of more evidence.

The Court further notes that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)C).  The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, she lists Plaintiff's impairments and concludes by saying that she "did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 27).  This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").  McCarroll's claim that the ALJ did not properly develop the record by ordering a consultative examination to consider the combination of all of her impairments is without merit.

   Plaintiff has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

   DONE this 25th day of July, 2016.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE